IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-CR-1026-KWR |
| | ) | |
| v. | ) | |
| | ) | |
| DAMIAN AMARILLO, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S OPPOSED MOTION TO REVOKE MAGISTRATE JUDGE'S DETENTION ORDER**

Defendant argues that third-party release from pretrial detention to La Pasada Halfway House assures the safety of the community and his appearance at future court hearings. (Doc. 19). Defendant is charged with Second Degree Murder and "an offense under section 924(c)," and Defendant has not rebutted the presumption that no conditions of release will "reasonably assure the appearance" of Defendant or the "safety of the community." 18 U.S.C. 3142(e)(3)(B). The United States requests that this Court deny Defendant's Motion, uphold the United States Magistrate Court's Order, and continue to detain Defendant pending trial.

**PROCEDURAL HISTORY**

Defendant was indicted on July 31, 2024, on two counts: 18 U.S.C. § § 1153 and 1111: Second Degree Murder; 18 U.S.C. § 2: Aiding and Abetting and 18 U.S.C. § 924(c)(1)(A)(iii) Using and Carrying a Firearm in Relation to a Crime of Violence, and Possessing Such Firearm in Furtherance of Such Crime; Discharging Said Firearm. (Doc. 2).

1

**FACTUAL BACKGROUND**

In the early morning hours of June 5, 2024, the Jicarilla Apache Police Department (JAPD) responded to several calls reporting shots fired in a neighborhood in Dulce, New Mexico. Officers arrived near 48A Pumphouse Road where they found a man, John Doe, barely alive, laying on the driveway, with apparent gunshot wounds to his chest. The responding officer began life-saving efforts, but John Doe passed away several minutes later. His last words were "I can't breathe." A search of the surrounding scene revealed 5 spent 9mm Luger casings and a blood trail leading from a car to John Doe's body. No weapons located on or around John Doe, and investigators were unable to locate a firearm. Witnesses in the neighborhood described three individuals, two male, and one female, wearing black, fleeing the scene after an argument and gunshots were heard.

Law enforcement secured the dynamic scene and canvassed the neighborhood. Investigators spoke to the Defendant's mother, Talicia Amarillo because a neighbor reported to law enforcement that some individuals may be hiding in a shed on her property. Talicia wasn't sure where her son was at the time of her interview and told investigators that he wasn't around. She told investigators that Defendant left the house around 8:00 p.m. and did not return. She did not know there was a shooting until she received a text, and she denied having an argument with her son. She didn't know the name of the shooting victim. She also gave law enforcement consent to search her shed. Preliminary analysis of John Doe's phone indicates that Talicia invited John Doe over to her house that evening.

Defendant's brother, Dominic Amarillo, told law enforcement that his brother was agitated and "talking crazy." Dominic told law enforcement that he followed his brother once he left the residence but couldn't keep up with him and then he heard the shots while he was walking back to their residence.

2

Defendant was located hiding in a shed with his girlfriend, Genesis Cassador, several hours after the shooting. Defendant and Cassador did not respond to calls by law enforcement to exit the shed. Cassador later told law enforcement that Defendant would not let her exit the shed. The clothing worn by Cassador and Defendant, black clothing and white shoes, matched descriptions provided by neighbors. Cassador claimed to not have seen the shooting but said that she was groped sometime during the evening by John Doe.

Law enforcement interviewed another individual present with Defendant and Cassador that evening. Damian Ayzie, identified by "AB" by Cassador, told law enforcement that Defendant shot John Doe after an altercation where John Doe charged Defendant. Ayzie said Defendant said John Doe had a knife. Ayzie noted that Defendant had a 9 mm pistol, but he was not sure what Defendant did with the pistol following the shooting. Ayzie admitted to law enforcement that he was carrying a rifle during the incident; however, he did not use it. A subsequent search warrant and examination of the gun revealed that the casings used by Ayzie's gun did not match the casings found at the scene. Despite extensive efforts, law enforcement was unable to locate a 9 mm pistol in the area.

Defendant was in tribal custody on charges related to the shooting of John Doe. His grandmother, Clare Tafoya, was present in the courtroom on a separate matter. His grandmother had heard about the shooting and questioned Defendant about the incident. Defendant admitted to his grandmother that he shot John Doe, but that he shot John Doe in self-defense to protect his girlfriend.

On July 17, 2024, investigators learned that Defendant was trying to bribe tribal corrections officers to get a cell phone and pass a note to his mom. Investigators then searched his cell and found several letters. One letter, addressed to his mother, reiterates his claim regarding self-

defense. A separate snippet of paper also contains directions to his mother to buy a phone, lists times that he can text without detection, and requests for social media applications. Defendant also tells his mother not to use names when she communicates with instructions to use certain titles for other individuals to avoid detection. Another letter, addressed to Ayzie, was also found in Defendant's cell.

The letter written by Defendant directs Ayzie to memorize a version of events that supports Defendant's claim regarding self-defense, telling Ayzie to say that John Doe had a knife. Defendant writes, "I need our stories to match up…you have to do what this paper says or we're both f\*\*ked." Defendant tells Ayzie to "flush the paper" when he's done memorizing it. However, it appears that this letter was never delivered to Ayzie, who was also in tribal custody at the time.

After the discovery of the letters, law enforcement conducted additional interviews, including a second interview with Defendant's brother. This time, Dominic told law enforcement that he was "stressed" about the incident because he broke up a fight between Defendant and John Doe right before the shooting at Defendant's house. According to Dominic, Defendant did not like John Doe, because John Doe was drunk, had a machete in his pocket, and was being disrespectful. Dominic was missing a gun that he had bought, and he thought he lost it at the carnival in Farmington. He stated he purchased the gun for himself but would not tell investigators where he bought it.

Ayzie was interviewed a second time. Ayzie said that Defendant was in an argument with his mom, Talicia, before they left the house. Defendant and Ayzie saw John Doe bringing liquor to Defendant's house on the evening of the incident. Defendant was angry because John Doe was going to get his mom drunk. When John Doe exited Defendant's house sometime later, Defendant assaulted John Doe and punching him in the face. John Doe left the house, and Defendant chased

after him, and punched John Doe in the back of the head. John Doe then ran towards Defendant, and Defendant shot John Doe. Ayzie, Cassador, and Defendant ran away from the scene. Ayzie did not see John Doe grope Cassador. After the shooting, Defendant told Ayzie he was going to pick up the shell casings, and Ayzie did not see Defendant again. According to Ayzie, the gun that Defendant used was purchased for Defendant by his brother Dominic.[1] Defendant had previously shown Ayzie the gun.

Another witness, a juvenile, was interviewed by law enforcement. On the night of the shooting, the juvenile was hanging out with his friends. Defendant, Ayzie, and Cassador came by and "checked" them, searching their persons. They left, and when they came back, Ayzie and Defendant were wearing masks, and Ayzie had a rifle. Then, John Doe exited Defendant's house, located across the street. Ayzie and Defendant then "jumped" John Doe and punched him. Talicia and Dominic Amarillo were yelling at them to stop, and Dominic broke up the fight. John Doe ran away; Defendant and Ayzie were chasing him, with Dominic following. Then, the juvenile heard the gun shots.

**THE MAGISTRATE COURT'S FINDINGS**

Defendant was detained pending trial by the United States Magistrate Court on August 12, 2024. (Doc. 15). The Magistrate Court found that the government had presented "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community." *Id*. Specifically, the Magistrate Court noted the following factors in the analysis and statement of the reasons for detention: 1) "the weight of the evidence against the defendant is strong;" 2) "subject to lengthy period of incarceration if convicted;" 3) "lack of stable employment;" 4) "nature of the underlying offense;" and 5)

---

[1] It is unlawful under New Mexico state law for a person under 19 years old to possess a handgun. *See* N.M. Stat. Ann. § 30-7-2.2. Defendant turned nineteen a few months prior to this incident.

"evidence that, while incarcerated, Defendant attempted to smuggle contraband into facility and attempted to convey letters with instructions to witnesses in case and direction for witnesses to then destroy the letters." *Id*.

During the hearing (Gov't's Ex. 1), the Magistrate Court found Defendant to have a minimal flight risk based his minimal marijuana use and strong community ties. However, the Magistrate Court did note that Defendant hid from law enforcement to avoid apprehension. In considering the danger to the community, the Magistrate Court noted that Defendant had no criminal or juvenile history, had graduated from high school, and didn't appear to have any disciplinary issues while in school. The Magistrate Court considered the halfway house, but noted significant concern given the Defendant's conduct in custody and the allegations that he had written a letter intended to influence witness testimony and asked a jail guard to smuggle items into jail for him. This left the court with "not a great deal of confidence" that he would do well in an environment with stringent rules. Overall, in the view of the Magistrate Court, this tipped the balance in favor of detention, with heavy consideration given to the nature and circumstances of the charge and the weight of the evidence against Defendant. *Id*.

## ARGUMENT

The Magistrate Court correctly detained the Defendant pending trial after careful consideration of the factors delineated in 18 U.S.C. 3142(g).[2] "The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." *United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th Cir. 2003). Reopening a detention

---

[2] The factors relevant to considering whether there are release conditions that can ensure the defendant's appearance and the safety of the community are: (1) the nature and circumstances of the offense, including whether the offense is a federal crime of terrorism; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger the defendant would pose to the community if released." *United States v. Muhtorov*, 702 F. App'x 694, 698 (10th Cir. 2017).

hearing under § 3142(f)(2) requires "information" that was both "not known" previously and that is "material." The "favorabl[e]" procedure this Court may employ in conducting a de novo review includes considering the evidence submitted in the record and holding a hearing to consider new evidence available to the parties. *United States v. Garcia*, 445 F. App'x 105, 108 (10th Cir. 2011).

This Court may detain a defendant pending trial if the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). A presumption of detention arises when "an offense under section 924(c)" is charged. 18 U.S.C. 3142(e)(3)(B). "Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government." *United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991).

## I.   Defendant presents a flight risk based on a preponderance of the evidence.

"The government bears the burden of proving a defendant is a flight risk by a preponderance of the evidence." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017). The "severe sentence that [Defendant] faces if convicted and the significant weight of the evidence against him suggest that [he] has strong incentives to flee if released before trial." *United States v. Baker*, 349 F. Supp. 3d 1113, 1134 (D.N.M. 2018). If convicted, Defendant faces a statutory guideline imprisonment of not less than ten years of imprisonment consecutively up to life for these charges. He appears to have strong community and family ties. However, he did attempt to smuggle a letter out of jail and obtain an illicit cell phone by bribing a guard while in custody. Defendant also wrote a letter intended to influence a witness's testimony in his favor. He fled from the crime scene, hid from law enforcement, and did not respond to law enforcement's

commands. Defendant's actions raise significant concerns about his ability to comply with the stringent rules of the halfway house and conditions of release.

The curfews and travel restrictions proposed by Defendant do little to alleviate concerns about influencing witness testimony. Defendant's assertions about his relationship with his mother are equally unconvincing. Per witness reports, Defendant did not like his mother's relationship with John Doe and the juvenile witness told law enforcement that Defendant's mom was yelling at the Defendant while Defendant was assaulting John Doe. Therefore, there are no conditions of release that will reasonably assure the appearance of Defendant.

## II.     The nature and circumstances of the offense weigh in favor of detention.

The first factor the Court must evaluate when considering whether there are conditions of release that ensure the defendant's appearance and the safety of the community is the nature and circumstances of the charged offense. *See* § 3142(g)(1). The Court may also consider whether the offense is a crime of violence, meaning the use of physical force against another person. *See* § 3156(a)(4)(A). Defendant is charged with Second Degree Murder, Aiding and Abetting, and Using and Carrying a Firearm in Relation to a Crime of Violence, and Possessing Such Firearm in Furtherance of Such Crime; Discharging Said Firearm. (Doc. 2).

Defendant shot John Doe multiple times after two separate assaults initiated by Defendant because he didn't like when his mother drank with John Doe. The firearm used by Defendant hasn't been located despite significant efforts by law enforcement. Defendant attempted to clean up the crime scene, telling Ayzie he was going back to clean up the spent casings. Defendant wore a mask and all black clothing, fled from the crime scene, and hid in a shed. He did not respond to law enforcement commands and was forcefully removed from the shed. While incarcerated, Defendant tried to bribe a guard to obtain an illicit cell phone from his mother and wrote a letter

intended to influence the testimony of a witness. As demonstrated, the nature and circumstances of this case are both serious and violent. Therefore, this factor weighs in favor of detention.

III.    **The weight of the evidence against Defendant weighs in favor of detention.**

Section 3142(g)(2) directs the Court to consider the weight of the evidence against the person. "At this stage of the criminal proceedings, of course, the government need not offer all of its evidence," evidence just needs to be sufficient to persuade the Court. *Cisneros*, 328 F.3d 610, 618. The Court may also consider whether Defendant has "a valid affirmative defense." *United Mobley*, 720 F. App'x 441, 445. "[I]n both the perfect and imperfect self-defense contexts, the defendant must possess the subjective belief that deadly force was necessary to prevent death or great bodily harm, but only in the perfect self-defense context must the defendant's subjective belief also be objectively reasonable." *United States v. Craine*, 995 F.3d 1139, 1156 (10th Cir. 2021).

Defendant was hiding in a shed not far from the scene, wearing clothing matching the description provided by witnesses who observed individuals running from the scene. A juvenile witness observed Defendant assaulting John Doe at Defendant's house. Defendant's own brother broke up this fight between Defendant and John Doe prior to the shooting. Ayzie says Defendant punched John Doe in the head and then shot John Doe using a 9 mm pistol. Spent 9 mm Luger casings were located at the scene. While Defendant claimed John Doe had a knife, no knife was located on the scene. Two separate witnesses identify Defendant as the shooter. Ayzie witnessed the shooting, and Defendant's grandmother hears his confession that he was the shooter.

Defendant identifies himself as the shooter in letters recovered from his cell in tribal custody. He writes a letter proclaiming that the shooting was done in self-defense, but also writes a letter to Ayzie telling him what to say about self-defense. Even with a possible affirmative

defense, the evidence against Defendant supports a finding of guilt, therefore, this factor weighs in favor of detention.

**IV.    Some of Defendant's personal characteristics weighs slightly in favor of release.**

The relevant subfactors for the Court to consider when evaluating Defendant's personal history and characteristics are delineated in Section 3142(g)(3), and include family ties, past conduct, criminal history, and education. Jicarilla Apache Police received information that Defendant may have pulled a gun on an individual two weeks prior, however, this incident was not reported to law enforcement and the information is still under investigation. Defendant's conduct in custody, including seeking contraband and writing a letter intended to influence a witness, are concerning and suggest issues with following rules. However, Defendant is young, recently graduated from high school, and has no criminal history. Defendant appears to not have any disciplinary history at school. While Defendant uses marijuana, he appears not to have a significant substance abuse habit. He appears to have strong community and family ties; however, his mother and brother appear to be implicated in the incident and were not initially forthcoming with law enforcement. Therefore, this factor weighs slightly in favor of release.

**V.    Defendant's release creates a danger to the community.**

The final factor the Court must consider is the "nature and seriousness of the danger" to a person or the community that would be created by Defendant's release. *See* § 3142(g)(4). Defendant assaulted, pursued, again assaulted, and then shot John Doe in a neighborhood. He then fled the scene, ditched the firearm, and hid in a shed. There are allegations that Defendant wore all black and a mask, sought to remove the casings from the crime scene, and that he did not like John Doe's relationship with his mother. While in tribal custody, Defendant sought contraband, and authored a letter to Ayzie intending to influence his testimony to assure that their stories regarding

self-defense matched. If Defendant is released, Defendant could seek to influence further witness testimony, hide additional evidence, or seek contraband in violation of the rules of the halfway house. This risk is significant because the firearm has not been located and the investigation and evaluation of evidence is ongoing. Therefore, this factor weighs in favor of detention.

## CONCLUSION AND REQUEST FOR RELIEF

Detention is appropriate, and the Magistrate Court's decision was correct. The United States has presented sufficient evidence to show that Defendant presents a flight risk by a preponderance of the evidence and a danger to the community by clear and convincing evidence. The evidence and analysis presented also demonstrates that this Court cannot reduce the risk of non-appearance or danger to the community through conditions of release. Therefore, the United States requests that this Court deny Defendant's Motion.

Respectfully submitted,

ALEXANDER M. M. UBALLEZ
United States Attorney

Filed Electronically on 10/23/24
Caitlin L. Dillon
Assistant United States Attorney
201 3rd St. N.W. Ste. 900
Albuquerque, NM 87102
(505) 346-7274

CERTIFICATE OF SERVICE:
I HEREBY CERTIFY that I electronically
filed the foregoing with the Clerk of the
Court using the CM/ECF system which
will send notification to counsel of record.

*Filed Electronically on 10/23/2024*
Caitlin L. Dillon
Assistant United States Attorney