# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA

      Plaintiff,

    vs.                               Case No. 1:24-cr-01026 KWR

DAMIAN AMARILLO,

      Defendant.

## <u>ORDER DENYING DEFENDANT'S MOTION TO REVOKE DETENTION ORDER</u>

THIS MATTER is before the Court on Defendant's Motion to Revoke Magistrate Judge's Detention Order **(Doc. 19)**. Defendant moves to revoke Judge Yarbrough's detention order pursuant to 18 U.S.C. §§ 3142 and 3145(b). Having conducted a *de novo* review of the record in this case, including the Pretrial Services' report, the detention hearing, and the parties' briefing, the Court finds Defendant's Motion is not well taken and, therefore, is **DENIED.**

## BACKGROUND

The Government alleges that Defendant shot and killed John Doe.  Defendant was indicted on July 31, 2024, on two counts: 18 U.S.C. § § 1153 and 1111: Second Degree Murder; 18 U.S.C. § 2: Aiding and Abetting and 18 U.S.C. § 924(c)(1)(A)(iii) Using and Carrying a Firearm in Relation to a Crime of Violence, and Possessing Such Firearm in Furtherance of Such Crime; Discharging Said Firearm. (Doc. 2).

The pretrial services report recommended that the Defendant be detained. It stated that defendant poses a risk of nonappearance or danger to the community due to the offense charged,

Defendant's conduct during arrest for the instant offense, his mental health history, his lack of verifiable employment, the nature of the instant offense, and his substance abuse history.

Judge Yarbrough held a preliminary hearing and a detention hearing. At the detention hearing, Judge Yarbrough found by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of the community. Doc. 15 at 2. Defendant was ordered detained pending trial. *Id.*

Judge Yarbrough noted that the weight of the evidence is strong, Defendant is subject to a lengthy period of incarceration if convicted, and he lacks stable employment. He also cited to the nature of the underlying offense, and evidence that while incarcerated Defendant attempted to smuggle contraband into the facility, attempted to convey instructions through letters to witnesses in the case, and attempted to direct witnesses to destroy the letters. Doc. 15 at 3.

Defendant now moves to revoke Judge Yarbrough's detention order.

## LEGAL STANDARD

"A defendant may be detained pending trial if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Mobley*, 720 F. App'x 441, 443–44 (10th Cir. 2017), *citing* 18 U.S.C. § 3142(e)(1). "The government bears the burden of proving risk of flight by a preponderance of the evidence and dangerousness to any other person or the community by clear and convincing evidence." *Mobley*, 720 F. App'x at 443-44 (internal citations omitted), *citing United States v. Cisneros,* 328 F.3d 610, 615 (10th Cir. 2003).

Under § 3142(g), the Court must consider four factors as part of the evaluation: "(1) the nature and circumstances of the offense charged, including whether the offense ... involves a minor victim"; "(2) the weight of the evidence against the person"; (3) "the history and characteristics of

the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

A district judge may order release or revoke a detention order under 18 U.S.C. § 3145.  The district judge reviews the record *de novo*. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).  Moreover, the Court may consider the evidence before the magistrate judge and may also consider new evidence presented by the parties.  *Id.*  at 617.

### **DISCUSSION**

Defendant moves to revoke the detention order under 18 U.S.C. § 3145.  Considering the record *de novo*, the Court denies the motion, finding by a preponderance of the evidence that Defendant is a flight risk and by clear and convincing evidence that he is a danger to the community. Moreover, no condition or combination of conditions will reasonably assure his appearance or the safety of the community.

**I.      Detention factors under § 3142(g)**.

The Court considers the § 3142(g) factors below, and finds they weigh in favor of detention.

**A.      Rebuttable Presumption of Detention.**

The rebuttable presumption arises under 18 U.S.C. § 3142(e) because Defendant is charged with an offense under 18 U.S.C. § 924(c), possession or using a firearm in furtherance of a crime of violence, and the firearm was discharged. *See* 18 U.S.C. § 3142(e)(3)(B). Congress has imposed a rebuttable presumption that no combination of conditions of release will reasonably assure the attendance of the defendant at future court proceedings or assure the safety of the community. 18 U.S.C. § 3142(e)(3)(B). Once the presumption is invoked, the burden of production shifts to the defendant.  *United States v. Striklin*, 932 F.2d 1353, 1354 (10th Cir. 1991).  "However, the burden

3

of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain." *Id.* at 1354-55.

Here, Defendant proffered evidence that he has strong community ties, strong family ties, and a lack of criminal history. It is not clear this is sufficient to rebut the presumption. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991) (finding presumption not rebutted where defendant offered proof of strong family ties and government made strong evidentiary showing). The Court does not believe he has rebutted the presumption.

Alternatively, assuming Defendant has rebutted the presumption, the presumption remains a consideration when weighing the § 3142(g) factors. The Court finds that the presumption here weighs in favor of detention.

### B.      Nature and Circumstances of the Offenses Charged.

The Court must consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence … or involves …a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, Defendant is charged with both a crime of violence (second degree murder) and a § 924(c)(1)(A)(iii) charge involving the discharge of a firearm in furtherance of a crime of violence. *See United States v. Kepler*, 74 F.4th 1292, 1303 (10th Cir. 2023) (federal second-degree murder conviction was a crime of violence).

The second-degree murder charge and the § 924(c) charge are serious offenses and involve serious violent allegations, the murder of John Doe. The Government alleges that after assaulting John Doe, Defendant chased down, and shot and killed, the victim. Defendant allegedly told his grandmother he shot John Doe in defense of his girlfriend.

The Government alleges that Defendant shot John Doe multiple times after Defendant had assaulted John Doe twice.  Defendant allegedly did not like that John Doe drank alcohol with his mother. Defendant allegedly told Mr. Ayzie to clean up the spent shell casings.  Defendant fled from the scene and hid in a shed.  He did not initially respond to law enforcement commands and was allegedly forcefully removed from the shed.  Doc. 20 at 8.

The Government alleges that while incarcerated Defendant tried to influence or bribe a guard to obtain an illicit cell phone from his mother and wrote a letter intended to influence the testimony of a witness.  Doc. 20 at 8-9. Defendant asserts he never wrote a letter to influence a witness, but merely wrote notes for his own use. Doc. 24 at 8-9.

Moreover, Defendant faces significant potential sentencing exposure if he is convicted.[1] The maximum sentence for second degree murder is life. 18 U.S.C. § 1111(b). Under the § 924(c)(1)(A)(iii) charge, Defendant allegedly used and discharged a firearm in relation to or in furtherance of a crime of violence.  This charge has a ten-year minimum term of imprisonment, in addition to the sentence imposed on the second-degree murder conviction. *Id.* The second-degree murder charge has a significant base offense level and advisory guideline range. *See* USSG § 2A1.2.

Here, the seriousness of the crimes charged, the nature and circumstances of the offense, as well as the potential minimum and maximum term of imprisonment weigh in favor of finding

---

[1] Defendant is presumed innocent, there is no Presentence Report, and the Court makes no determination regarding sentencing matters, but merely notes the *possibilities* faced by Defendant to elucidate the nature and circumstances of the crimes charged. *See, e.g., United States v. Selman*, 691 F. Supp. 3d 1334, 1341 (N.D. Okla. 2023) (Under § 3142)(g)(1), noting that the defendant faces a lengthy sentence if convicted); *United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003)(noting that district judge considered maximum sentenced faced by defendant).

that Defendant is a flight risk and danger to the community.  This factor weighs heavily in favor of detention.

### C.    Weight of the Evidence.

The weight of the evidence appears to be strong and weighs in favor of detention.[2]  The Tenth Circuit has stated that the Court should consider the weight of the evidence for the offense charged, as well as any asserted affirmative defenses. *See United States v. Mobley*, 720 F. App'x 441, 445 (10th Cir. 2017) (considering weight of evidence supporting charges as well as defendant's affirmative defense); *United States v. Cisneros*, 328 F.3d 610, 618 (10th Cir. 2003) ("the evidence in the record is sufficient to persuade us that it is strong as to the charges against Cisneros.").

Multiple witnesses saw Defendant assault the victim and chase after him when he fled. One witness, Mr. Ayzie, alleges that Defendant shot John Doe using a 9 mm pistol.  Spent 9 mm Luger casings were located at the scene.  Defendant allegedly confessed to his grandmother that he was the shooter, but asserts he acted to protect his girlfriend. Doc. 20 at 3. Moreover, Defendant identifies himself as the shooter in letters recovered while he was in custody.  He asserts in the letters that he acted in self-defense, and apparently attempts to instructs Mr. Ayzie to say it was in self-defense.

Mr. Ayzie asserts that he saw Defendant shoot John Doe.  Defendant asserts that Mr. Ayzie's testimony is not credible, as he may be the shooter. Mr. Ayzie carried a rifle with him during the offense. However, such suggestions are contrary to Defendant's own alleged statements, in which he is alleged to have said that he killed John Doe in self-defense. For example, Defendant

---

[2] In considering this factor, Defendant is presumed innocent and has a right to a jury trial. The Court does not and cannot make a pretrial determination that Defendant is guilty at this procedural posture. Nevertheless, the Court is required to consider the weight of the evidence to make the appropriate analysis under § 3142(g).

allegedly told his grandmother that he shot John Doe in self-defense to protect his girlfriend. Doc. 20 at 3. Defendant allegedly wrote multiple letters in which he referenced self-defense. Doc. 20 at 3-4.

Defendant does not expressly argue in his briefing that he acted in self-defense. Docs. 19, 24. To the extent the Court should *sua sponte* considering a self-defense claim in evaluating the weight of the evidence, the Court finds that the record before the Court does not support a self-defense claim so as to mandate his release at this time. "A defendant may negate the malice element of murder by showing he had "justification, excuse, or mitigation" when he committed the killing. *United States v. Kepler*, 74 F.4th 1292, 1313 (10th Cir. 2023). One such justification is self-defense. *Id*.  The Tenth Circuit has described self-defense as follows:

> "A person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response." *Toledo*, 739 F.3d at 567. Self-defense thus requires both (1) a perception of danger that is objectively reasonable, even if inaccurate; and (2) a necessary response that is proportional to the perceived danger. *Id*. at 568. Because self-defense completely negates malice, it entitles a defendant to acquittal from federal first- or second-degree murder. *Id*.
>
> When a defendant responds with force based on an unreasonable perception of danger, we have recognized an "imperfect self-defense." *Id*. at 568-69. "Imperfect self-defense" applies in a homicide case when a defendant "acts in self-defense but is criminally negligent in doing so." It may reduce a federal murder charge to the lesser-included offense of involuntary manslaughter. *United States v. Brown*, 287 F.3d 965, 975 (10th Cir. 2002).
>
> "[T]he distinguishing factor between perfect and imperfect self-defense [is] the reasonableness of the defendant's belief that deadly force was necessary to prevent death or great bodily harm—if reasonable, then he is entitled to a self-defense acquittal; if criminally negligent, then he is guilty of involuntary manslaughter." *Toledo*, 739 F.3d at 569 (footnote omitted).

*United States v. Kepler*, 74 F.4th 1292, 1313–14 (10th Cir. 2023).  Here, the record before the Court does not warrant the defendant's release.  *United States v. Mobley*, 720 F. App'x 441, 445 (10th Cir. 2017) (district court erred in not considering affirmative defense). Defendant allegedly

told his grandmother that he shot John Doe to protect his girlfriend. But there is nothing in the record to suggest that Defendant reasonably believed her life was in danger. The Government alleges that Defendant assaulted the victim. When the victim fled, he chased the victim and shot him. Although John Doe was said to carry a knife on him, no knife was found at the crime scene.

At this stage of the proceedings, the Government has sufficiently shown evidence in its favor. This factor weighs in favor of detention.

### D.  Defendant's history and characteristics.

The next factor is "the history and characteristics of the person." § 3142(g)(3). It includes the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." § 3142(g)(3)(A).

Both parties agree that Defendant's history and characteristics favor release, but they dispute the degree to which this factor favors release.  Defendant is a 19-year-old recent high school graduate with no criminal history and no disciplinary issues. Although Defendant is alleged to have pulled a gun on an individual in a separate incident, Defendant asserts the alleged victim in that incident denies it occurred. Moreover, he has strong ties to his community and his family. He has no significant substance abuse history, but he may have been under the influence of alcohol during the instant offense.  Doc. 11 at 2.  Although he did not have stable employment, he is only 19 years old, on a gap year between high school and San Juan community college.

The Court is concerned about his alleged actions during and after his arrest. Defendant allegedly initially refused instructions from law enforcement during his arrest. He allegedly instructed Mr. Ayzie to clean up the crime scene by collecting the shell casings. He allegedly

attempted to influence a corrections officer for a cell phone, and allegedly attempted to coach a witness.

In sum, Defendant's history and characteristics weigh in favor of release, but it is not sufficient to outweigh other factors which favor detention.

### E.     Danger to Community.

The Court must also consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

> the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence....

S.Rep. at 12-13, 1984 U.S. Code Cong. & Adm. News, 3195, *cited in United States v. Bolivar*, No. 20-CR-717 WJ, 2020 WL 1912004, at *3 (D.N.M. Apr. 20, 2020).  As the parties acknowledge, a rebuttable presumption of dangerousness arises here.

Here, the allegations in this case suggest that Defendant is danger to the community. Defendant allegedly assaulted John Doe twice, chased him down after he fled and shot him, resulting in a second-degree murder charge and a § 924(c) charge for discharging a firearm. The Government alleges he sought to remove evidence from the crime scene (shell casings). Moreover, while in custody he allegedly attempted to influence or bribe a corrections officer for a cell phone and allegedly attempted to influence witness testimony.

The Court finds that the dangerousness factor weighs in favor of detention.

### F.     Weighing the factors.

Weighing the factors above, including the presumption of detention, the Court finds that the Government has shown by a preponderance of the evidence that Defendant is a flight risk and by clear and convincing evidence that Defendant is a danger to the community.

9

II.    **The proposed conditions of release will not reasonably assure the safety of the community or his appearance as required.**

A defendant must be released pending trial unless a judicial officer finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Begay,* 315 Fed.Appx. 53, 54 (10th Cir. 2009). The Government bears the burden of showing that no conditions of release will reasonably assure the appearance of the defendant or the safety of the community. *United States v. Gerkin*, 570 F. App'x 819, 821 (10th Cir. 2014).

Here, Defendant asserts that pretrial supervision, location monitoring, travel restrictions, substance abuse testing, and release to the third-party custody of La Pasada halfway house, will reasonably assure his appearance as required and the safety of the community. He also suggests restrictions on contacting witnesses in this case. The Court disagrees, and finds that no condition or combination of conditions will reasonably assure his appearance as required and the safety of any other person and the community, for the reasons explained in its analysis of the § 3142(g) factors.

In addition to the above, the Court notes that Defendant is charged with two very serious crimes, second degree murder and a § 924(c) charge for discharging a firearm, which carries a minimum sentence of ten years' imprisonment in addition to any sentence imposed on the second-degree murder conviction.

The Court is also concerned about Defendant's conduct during and following his arrest, which casts doubt on his desire to follow the rules. He initially refused law enforcement commands when he was arrested. Defendant allegedly told a witness to pick up the shell casings. He also attempted to influence or bribe a corrections officer for a cell phone and attempted to write letters

to influence the testimony of witnesses, telling them to memorize the story he gave them. Defendant asserts he did this due to his desire to contact family members and the challenges of incarceration. Given the record and the above factors, it appears Defendant would not follow the rules imposed by the Court or the rules of the halfway house.

The firearm allegedly used in this case is missing, and the Government is concerned his release may impede evidence collection or the investigation. Evidence or witness tampering which impedes an official proceeding may be a crime. *See* 18 U.S.C. § 1512.

Defendant asserts that he is not a flight risk, as he has strong community and family ties to Dulce, New Mexico and the Jicarilla Apache Nation. He asserts that as a 19-year-old recent high school graduate, he has never lived away from home or his family, and would not flee or leave Dulce. This argument loses persuasive value as Defendant does not request home confinement, but requests release to La Pasada halfway house in Albuquerque, far away from his home or Dulce, New Mexico. Moreover, the inquiry under risk of flight is not limited to whether a defendant is likely to flee the country.  Rather, the inquiry includes whether a defendant is likely to appear as required. § 3142(f). Given the above § 3142(g) factors and analysis, including the seriousness of the charges, the potential minimum and maximum sentence, as well as his apparent issues with following authority or rules imposed on him, the Court finds that he is more likely than not a flight risk.

Here, the above analysis of the § 3142(g) factors, the rebuttable presumption, the potential of a minimum ten-year sentence, and the nature and circumstances of the crimes charged, suggest that there are no conditions which will reasonably assure the safety of the community or his appearance as required.

**CONCLUSION**

Weighing the § 3142(g) factors together and the presumption of detention, the Court concludes that Defendant is a danger to the community by clear and convincing evidence and that no conditions of release will reasonably assure the safety of the community.  Moreover, the Court finds by a preponderance of the evidence that Defendant is a flight risk and no combination of conditions will reasonably assure his appearance as required.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Revoke Magistrate Judge's Detention Order **(Doc. 19)** is **DENIED.**

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

12